DECISION AND JUDGMENT ENTRY
{¶ 1} The Ohio State University Medical Center (OSU) appeals the trial court's entry overruling its motions and dismissing the case. Having reviewed the record, we conclude we have no jurisdiction to hear this appeal. Prior to OSU filing its motions, Raymond Wheeler voluntary dismissed the underlying complaint with prejudice, an action that automatically terminated that part of the proceedings to which OSU was a party. OSU's post-dismissal motions were thus legal nullities. Therefore, the trial court's ruling on those motions was also a nullity without legal effect. Moreover, Wheeler's voluntary dismissal divested the trial court of authority to subsequently dismiss the case, making the trial court's dismissal entry of October 24, 2003, a nullity. Because OSU is appealing a legal nullity rather than a final, appealable order, we have no jurisdiction.
 {¶ 2} In July 2000, Raymond Wheeler suffered serious injury as a result of an automobile accident caused by Ann Langdon Loxterman. Wheeler's injuries required him to be hospitalized at OSU for a total of six and a half weeks (three and a half weeks in July and another three weeks in September). Following Wheeler's release from the hospital, his two adult children provided in-home care for him.
 {¶ 3} In November 2001, Loxterman paid Wheeler $100,000, the limits of her liability policy, to settle any claims he may have had against her. After paying his attorney, Wheeler received $66,666.67 from the settlement.
 {¶ 4} In March 2003, Wheeler filed a complaint for "interpleader" against OSU; Ohio Department of Job Family Services (ODJFS); the United States of America, Secretary of the Department of Health and Human Services[1] (USA); and his two children, Karen Smalley and Carl Wheeler. Wheeler alleged that the defendants claimed to have provided medical care and services necessitated by the accident. He further alleged that some of the defendants possessed statutory rights of subrogation as to the settlement proceeds. Wheeler acknowledged that the defendants' claims "far exceed the amounts available to pay those claims." Therefore, Wheeler asked that he be permitted to deposit the $66,666.67 with the court and that the court determine the proper distribution of the funds. Wheeler did not, however, deposit the funds with the court. Rather, the funds remained in a trust account managed by Wheeler's attorney.
 {¶ 5} In response to Wheeler's complaint, ODJFS filed an answer claiming a right to recover $12,374.91. OSU also filed an answer indicating that Wheeler had incurred medical bills in the amount of $82,797.45. OSU claimed it had a right to recover the entire $66,666.67. Next, Wheeler's children filed an answer and counterclaim. In their counterclaim, the children indicated that they had provided 24-hour care to Wheeler, "including medication, feeding, bathing, cooking, dressing, cleaning, laundry, and driving", from the time of the accident until September 2001. The children claimed they expended $72,945.21 on Wheeler's care and sought judgment against Wheeler for that amount. Finally, the USA filed an answer and counterclaim. The USA claimed a right to recover a portion of the funds but indicated that it had yet to ascertain the amount owed.
 {¶ 6} In May 2003, OSU sought leave to file an amended answer and to assert a counterclaim for the $82,797.45 in unpaid medical bills. On May 29, 2003, the trial court granted OSU's motion and ordered OSU to serve a copy of its amended answer and counterclaim on the parties within ten days. In accordance with the court's order, OSU served its amended answer and counterclaim on the parties. However, OSU failed to file its amended answer and counterclaim with the court. In June 2003, Wheeler filed a reply to OSU's counterclaim.
 {¶ 7} Although Wheeler replied to OSU's unfiled counterclaim, he did not reply to the counterclaims of his children or the USA. Thus, in July 2003, Wheeler's children filed a motion for a default judgment. On July 17, 2003, the trial court granted the children a default judgment against Wheeler in the amount of $72,945.21. One week later, the court approved the children's request for a non-wage garnishment of the trust account where the funds remained.
 {¶ 8} During this same time, Wheeler apparently settled the claims of ODJFS and the USA. Although the record does not evidence any payments to ODJFS, the parties to this appeal agree that Wheeler paid ODJFS $12,374.91 to settle its claim. Moreover, the record indicates that on July 31, 2003, Wheeler paid $16,090.11 to the USA to settle its claim.
 {¶ 9} After paying ODJFS and the USA, Wheeler deposited the remaining $38,201.65 with the clerk of court in accordance with the order of garnishment. On August 1, 2003, the trial court issued an entry ordering the clerk to pay $38,201 to the children as payment on their judgment. Later that same day, Wheeler voluntarily dismissed his case with prejudice under Civ.R. 41(A). As of that date, OSU had not filed a counterclaim or any of the motions that form the basis of its appeal.
 {¶ 10} On August 8, 2003, OSU filed a motion seeking an order compelling Wheeler to escrow the $66,666.67 settlement fund with the clerk of court. The motion also sought to stay execution of the children's default judgment. At the time OSU filed its motion, it was unaware the court had ordered the $38,201 disbursed to the children. Upon learning of the court's order, OSU filed a motion seeking to vacate the order of execution obtained by the children. OSU's motion also sought to set aside Wheeler's settlements with ODJFS and the USA. On October 16, 2003, the trial court held an in camera hearing on OSU's motions. Following the hearing, OSU filed a motion for leave to file its amended answer and counterclaim.
 {¶ 11} On October 24, 2003, the trial court, finding no merit in OSU's arguments, overruled the motions seeking a stay or vacating the execution and settlement agreements. Additionally, the court denied OSU's motion to file its amended answer and counterclaim, noting that Wheeler voluntarily dismissed the case on August 1, 2003. The trial court ended by stating: "All matters thus being fully adjudicated, this case is dismissed. There being no just reason for delay, this is a final appealable order." OSU now appeals the trial court's entry and raises the following assignments of error:
"ASSIGNMENT OF ERROR NO. 1
The trial court abused it's (sic) discretion by denying Plaintiff/Appellant (sic) The Ohio State University Medical Center's motion for leave to file it's (sic) amended answer and counterclaim against Plaintiff/Appellee, Raymond Wheeler, filed on October 20, 2003.
ASSIGNMENT OF ERROR NO. 2
The trial court erred by granting Defendant/Appellees, Karen Smalley and Carl Wheeler an order of execution dated July 25, 2003, prior to deciding all of the parties' interpled claims as required by Civil Rule of Procedure 22.
ASSIGNMENT OF ERROR NO. 3
The trial court erred by denying motion of Plaintiff/Appellant (sic) The Ohio State University Medical Center, filed on August 8, 2003, requesting a stay of execution of the default judgment granted to Defendants/Appellees, Carl Wheeler and Karen Smalley on July 18, 2003.
ASSIGNMENT OF ERROR NO. 4
The trial court erred by denying the motion of the Plaintiff/Appellant (sic) The Ohio State University Medical Center, filed on August 15, 2003, to vacate the order of execution granted Defendants/Appellees Carl Wheeler and Karen Smalley on July 25, 2003."
 {¶ 12} The facts and proceedings of this case are quite unique. Our research reveals that interpleader actions generally take one of two forms. See generally Civ.R. 22. The first type of interpleader involves mutually exclusive claims to the same fund or property. See Klein Darling, Civil Practice (1997) 941, Section 22-6. In such a case, the stakeholder does not know which claimant is the proper payee so he files an interpleader action, deposits the money with the court, and leaves the claimants to establish the validity of one of the claims. See Staff Note to Civ.R. 22. For example, an insurance company issues a life insurance policy to X, who names as the beneficiary "my wife at the time of my death." Following X's death, both A and B claim to be X's wife. The insurance company files an interpleader action, deposits the insurance proceeds with the court, and lets the court determine which party, A or B, is X's wife. See Id. See, e.g., Aetna Life Ins. Co. v. Schilling, 67 Ohio St.3d 164,1993-Ohio-231, 616 N.E.2d 893; Western Southern Life Ins. Co.v. Braun (1996), 116 Ohio App.3d 423, 688 N.E.2d 534; Kabbaz v.Prudential Ins. Co. of America (1985), 27 Ohio App.3d 254,501 N.E.2d 43. The second type of interpleader involves a number of potentially valid claims that are not technically mutually exclusive, but in their aggregate they exceed the limits of the stakeholder's liability. See Klein Darling, Civil Practice (1997) 940, Section 22-5. In such a case, the stakeholder files an interpleader action, deposits the fund with the court, and leaves the court to apportion the fund among those claimants having valid claims. For example, an insurance company issues an insurance policy to X with liability coverage in the amount of $100,000 per person and $300,000 per accident. Subsequently, X causes an accident in which six people are seriously injured. The insurance company, anticipating multiple claims and recovery potentially in excess of X's policy limits, files an interpleader action, deposits the $300,000 with the court, and leaves the court to apportion the money among these persons having valid claims. See, e.g., State Farm Fire Cas. Co. v. Tashire
(1967), 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270; Grange Mut.Cas. Co. v. Casseday (Nov. 23, 1988), Columbiana App. No. 87-C-59; National Mut. Ins. Co. v. Frey (Sept. 16, 1991), Shelby App. No. 17-91-3; Transamerica Ins. Co. v. Nolan (Nov. 22, 1993), Warren App. No. CA93-04-035.
 {¶ 13} Here, the defendants' claims are not mutually exclusive. Rather, each of the four defendants has a potentially valid separate claim. Moreover, Wheeler's liability is not limited to the $66,666.67 settlement he received. Wheeler was potentially liable to each of the defendants for whatever amount of services or compensation they individually provided to him. Should any of the defendants obtain a judgment against him, the aggregate liability is not limited to the specific settlement he received from the tortfeasor. Rather, the claimants would be free to satisfy their various judgments from any and all of his nonexempt or unencumbered resources. Thus, we question whether interpleader was appropriate given the circumstances of this case. However, OSU did not object to this case proceeding as an interpleader action. Nor did it file a counterclaim. Therefore, we proceed to the disposition of this appeal despite our concerns.
 {¶ 14} For the sake of clarity, we will address OSU's first, third, and fourth assignments of error together. In these assignments of error, OSU challenges the court's rulings on various motions it filed after Wheeler voluntary dismissed the case with prejudice.
 {¶ 15} Civ.R. 41(A)(1)(a) permits a plaintiff to dismiss his action without order of the court any time before the commencement of trial unless a counterclaim that cannot remain pending for independent adjudication has been served by the defendant. Dismissals under Civ.R. 41(A)(1)(a) are self-executing. Selker Furber v. Brightman (2000),138 Ohio App.3d 710, 714, 742 N.E.2d 203; Andrews v. Sajar Plastics,Inc. (1994), 98 Ohio App.3d 61, 66, 647 N.E.2d 854. Thus, "* * * the mere filing of the notice of dismissal by the plaintiff automatically terminates the case without intervention by the court." Payton v. Rehberg (1997), 119 Ohio App.3d 183, 191,694 N.E.2d 1379. See, also, Clay Hyder Trucking Lines, Inc. v.Riley (1984), 16 Ohio App.3d 224, 225, 475 N.E.2d 183, citingStandard Oil Co. v. Grice (1975), 46 Ohio App.2d 97, 101,345 N.E.2d 458 ("The plain language of Civ.R. 41(A)(1)(a) gives plaintiff an absolute right to terminate his cause of action voluntarily and unilaterally at any time prior to commencement of trial.")
 {¶ 16} This case automatically terminated on August 1, 2003, when Wheeler filed his voluntary dismissal with prejudice. Because OSU failed to perfect its counterclaim or to intervene in the children's counterclaim, it now had no way to pursue its claim for the fund that Wheeler had "interpled." OSU responded by filing three motions: (1) a motion for leave to file its amended answer and counterclaim; (2) a motion to stay execution of the children's default judgment; and (3) a motion to vacate the order of execution.
 {¶ 17} In its first assignment of error, OSU contends the court erred by denying it leave to file its amended answer and counterclaim. The record indicates that OSU filed its motion in October 2003. By that time, however, Wheeler had voluntarily dismissed the case with prejudice. A dismissal with prejudice constitutes a final judgment. See Tower City Properties v.Cuyahoga Cty. Bd. of Revision (1990), 49 Ohio St.3d 67, 69,551 N.E.2d 122. Thus, the case had already reached its conclusion by the time OSU sought leave to file its amended answer and counterclaim. A defendant who has not filed a counterclaim cannot amend its pleadings to assert new claims once the plaintiff voluntarily dismisses the case. See Hatcher v. Heiner's Bakery,Inc. (Dec. 4, 1996), Scioto App. No. 95CA2400, unreported, citing State ex rel. Hunt v. Thompson (1992),63 Ohio St.3d 182, 183, 586 N.E.2d 107. Accordingly, OSU's motion was a nullity.
 {¶ 18} In its third assignment of error, OSU contends the court erred by denying its motion to stay execution of the children's default judgment. At the time OSU filed its motion, the court had approved the children's order of execution and ordered the funds disbursed to the children. Thus, the children had successfully executed on their judgment by the time OSU filed its motion. Because execution on the judgment had already been accomplished, OSU's motion to stay execution was moot. More importantly, OSU was not a party to that counterclaim. Thus, their motion was a legal nullity.
 {¶ 19} In its fourth assignment of error, OSU contends the court erred by denying its motion to vacate the order of execution. In its motion, OSU argued the children's default judgment was an interlocutory order and thus, not capable of execution. The record indicates the children's default judgment lacks the Civ.R. 54(B) language necessary to make it a final judgment.[2] Moreover, OSU is correct in noting that non-final, interlocutory orders are not capable of execution. SeeTowner v. Wells (1837), 8 Ohio 136, 140; Profancik v. Short'sAthletic Club, Inc. (Dec. 16, 1998), Wayne App. No. 2744-M. However, as the following discussion will show, we also lack jurisdiction to consider this issue.
 {¶ 20} The record indicates OSU filed its motion to vacate the order of execution on August 15, 2003, two weeks after Wheeler dismissed the case with prejudice. Wheeler's dismissal with prejudice constituted a final judgment on the merits. SeeTower City. Once a final judgment existed, the trial court no longer had authority to revise or vacate its prior orders absent some recognized form of relief such as Civ.R. 60(B). And as previously noted, OSU was not a party to the children's counterclaim. Nor did it seek to intervene. Accordingly, we conclude OSU's motion to vacate the order of execution was a nullity.
 {¶ 21} Having determined that OSU's motions were nullities, we turn our attention to the court's entry of October 24, 2003. We conclude the court's ruling on OSU's motions was without legal effect since the motions themselves were nullities. Moreover, we conclude Wheeler's voluntary dismissal with prejudice divested the court of authority to subsequently dismiss the case. This case terminated automatically upon the filing of Wheeler's voluntary dismissal, in part, because OSU failed to file a counterclaim. There was no pending case for the trial court to dismiss. Thus, we are forced to conclude that the trial court's dismissal entry was a nullity, i.e., the entry is not a final, appealable order and we have no jurisdiction to hear this appeal.
 {¶ 22} In its second assignment of error, OSU contends the court erred by approving the children's order of execution. OSU contends the court should not have permitted the children to execute on their judgment until all of the claims to the $66,666.67 settlement fund had been determined. OSU was not a party to the children's counterclaim and accordingly, did not appeal from the order of execution. Rather, it appealed from the order denying its request to vacate the execution. We have already determined that order was a nullity rather than a final appealable order. Accordingly, we have no jurisdiction to consider this assignment of error either.
 {¶ 23} In summary, we conclude the entry from which OSU has appealed is a nullity. Since the entry is not a final, appealable order, we have no jurisdiction over this appeal and dismiss this appeal.
Appeal dismissed.
 JUDGMENT ENTRY
It is ordered that the APPEAL BE DISMISSED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] Wheeler's complaint named the United States Department of Medicare c/o Centers for Medicare and Medicaid Services as a defendant. However, the United States of America's answer establishes that the real party in interest is the Secretary of the Department of Health and Human Services.
[2] Civ.R. 54(B) provides: "When more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."